We start with our cases for today. I'm going to turn over the role of presiding judge to Judge Reyna because I am going to make a motion myself before the court. Blayne, would you stand up? I'm going to move the admission of Blayne Larson, who is a member of the bar and is in good standing with the highest court of Texas. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. Blayne has been my law clerk for a very long time. He still asked me how many months. I said, I don't know, a lot. He probably knows the exact number, I'm sure. It's been such a pleasure to have him. He has helped me with some really big and important decisions. The best part is he's the only man in Chambers. The poor guy works with five women day in and day out. That's his daughter, Henley. It's okay because Blayne has a sister and his wife has all sisters. He's used to being in an all-female environment, especially with his daughter now, Henley. He is just cool and calm. When I get worked up, he just stays very even keel. It's a nice contribution to the Chambers, in addition to his excellent work as a lawyer. He's just got such a wonderful personality. I'm really going to miss him, but it's my great joy to move, if my colleagues will vote, but to move his admission to our bar so that we'll get to see him more often. He'll come back and argue cases. So, we have a motion. How do you vote? I vote in favor of the motion. I just want to add that I have seen Blayne serve as an excellent attorney before this court. Blayne, I hope you're not headed to an all-female law firm. You need a little bit of diversity in there, buddy. Well, I think the motion is passed. Okay, great. Reggie, would you please swear Blayne in? Please read my name. Do you solemnly swear or affirm that you will support yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America, and the representative bar of the United States Court of Appeals and the Federal Circuit? I do. You're welcome. Bye! Bye, Henley! Okay, thank you for indulging the court. Our first case for today is 2016-2152, Smart Door Holdings v. Edmund Industries. Mr. Foisik, please proceed. May it please the court, Michael Foisik, attorney for the appellant. Behind me is Martin Weick, president of Smart Door Holdings and also the inventor of the patented issue. On appeal, Claim 16 is the broadest claim. It's about a door, an open position, an opening position, a closed position, and a closing position. If I walk through a door and it suddenly snaps shut, it wouldn't work well. So a door isn't as simple as it sounds. There's the four steps. It doesn't seem important by itself, but in the bigger picture it may be. The prior art relates to the combination of Burke and Shea. I'm much more nervous than I thought I would be. One of the arguments that you've made in your brief is that... Let's look at the prior art just real quick from three different points of view because I think the board misunderstood the thrust of our reasoning and maybe it wasn't clear enough from the writing. So in three stages I think I can really sharpen that and then it will make sense why I cited the cases that we did. From a first point of view we have Shea with some regenerative breaking and then Burke which relates to a generator which does have regenerative breaking. There's no dispute as to the facts in the case. The facts of the reference there is described. The question is combining the regenerating feature of the Burke reference with the fire door of Shea. And it seems straightforward if just looked at in one way, but if the references are considered... Counsel, there was expert testimony in this case, a Mr. Haas, correct? Yes. Do you disagree with... First of all, did you offer any expert testimony? No. No, it was handled by a different attorney before the board. The board did rely on that expert testimony. They did. To find a motivation to combine results and other things of that nature. As far as it went, we don't disagree with as far as it went. But as you can see from what will come, there's a little more at work. And if it was just the simplest that I wouldn't be here and my client wouldn't be here, we would have accepted the decision. There's just a little more to it. We have a governor, a motor and governor in Shea for raising and lowering a door. In Burke, there's an energy recovery device. And if you just look at... If you just take those features out of context by themselves and just state them, it seems to make a lot of sense. And I'm not saying it doesn't make sense in the abstract, but when we look at the references, the Burke reference is talking about an AC motor on a big device, a train, an elevator. It's going one way. And the thing their uses have in common is what it's operating in is going to keep going in that direction, whether it's using power or not, whether it's regenerating or not. That's kind of a one-way trip. The Shea reference has a governor, but it doesn't have a need. It doesn't express a need for any additional current. It doesn't want extra power. If you combine the references, you get something novel. So that's one way of looking at that. But let's say you do combine... Combination isn't a combination. It's a replacement. So it's the idea of using regenerative braking in place of the braking that's in the main reference. Well, in the abstract, yes, that's exactly what it would sound like until you look a little more closely. What is it that you are need anything else? If you just put the references side by side, someone with ordinary skill would say, well, I could do a lot of things, but why? What's my motive? I could get power, but this guy doesn't seem to need it. And this motor is just going one way. Putting it on a door and replacing a governor, it sounds simple. It would be a big deal. I don't know how much of Shea would get the whole thing with Berks. But if you did, it would be a one-way operation. We won't arrive at the appellant's invention, which is a door that operates through the four stages. The motor will power the door open and regenerate when it's closed. So it doesn't seem like a big deal. It doesn't seem like a major change in use. But here we have a new product. We have a new effect. It's a new result. Yes, we've combined them, and we do get a new result, and it's put into a real invention. The claim doesn't just recite a way of recovering energy. It relates to an entire operation of a door through all of its cycle. So again, by itself, it means nothing. But let me take a second approach and just disagree with myself entirely. Say, yes, let's just go ahead and put that in. What would the artisan do with it? Does he vaporize Shea and just put his own whole Berk motor in? Well, that might not make sense. Shea's already got a motor to regenerate. Now you've got a second motor just for regeneration. The motivation is a little less. It's hard to understand exactly why we want to do those things. Again, this is not dispositive, but it's starting to shape things a certain way. Now let me just disagree with myself a third time and the last time. Let's just do it. Forget any other consideration. We're just going to do it in the best way we know how. We're going to slap that second motor on Shea. We're going to do whatever it takes to get rid of that governor, no matter what it does to it. It's going to be a real effort. There will be some inventive steps to a skilled artisan, somebody of ordinary skill. Not inventing, but if he just follows the references, he's going to have a little bit of a hard time. The problem is how difficult it would be to make those substitutions or changes is a question of fact. You didn't introduce any evidence in the form of expert testimony that would have caused the board to believe that these combinations, that changing Shea and Berk to be the claimed invention would have been difficult for a skilled artisan. They had an expert on the other side. The difficulty you have now is we're not a court of first impression. We don't get to re-decide facts. We have to look at the record and we can't disturb an opinion on a fact finding below unless it wasn't supported by substantial evidence. Here you have the Haas Declaration and we don't have any evidence to the contrary in the form of any declarations to the contrary, so I don't know how I could conclude that there wasn't substantial evidence for what the board found in deciding to make this combination. You have to tell me what evidence there is that makes it clear that the board knew like this is a do-over. It's not a do-over. Well, on its face, and just accept the result as you state it, on its face we have that result, but if we look at the case law and look at the prior art being considered in its entirety, regardless of any findings of fact, really would the prior art in this case lead someone to it? It's not a question of seeing our invention. Could they make it? Do you agree that the standard of review that we are to apply is substantial evidence in the fact findings of the PTAB? Yes. And what do we do with the fact that they credited Petitioner's Declarant about the motivation to combine? Well, that is a motivation to combine, but it doesn't look at the prior case law, which gives a little further insight into what you can and should and shouldn't be doing in considering something unobvious. Do you have a particular case in mind? Well, the proposed combination creates an inoperable device or teaches a way. We're getting two AC motors, they're going to work in the same, they run in one direction, a door reverses, and the concept would be, a literal There is another case we would rely on, a combination of two old elements does not negate patentability. These are two old elements. We do arrive at a different result, the even if they're not from the same fields, they're solving the same problem, which is the problem of breaking. And so how do you respond to that? It's a factual finding. The question of whether something is analogous or not is a two-part test, and it's a factual determination. And the PTAB said that under the second part of the test, which is directed to the two references directed to the same problem, that they are in fact analogous references. The problem is a door that operates through all four stages, not regenerative breaking. If you just take one element and say, yes, here's that element, it isn't really what we're doing. What is the evidence in the record to support that position? Because again, we're looking to see whether the factual findings of the PTAB are supported by substantial evidence. Right. Well, there's nothing I can point to with regard to that. Another case, suggestion to combine cannot require substantial reconstruction or redesign of prior art. And here you end up with two AC motors, and they're not going to be that You're into your rebuttal time. Would you like to save the remainder? Just for one second. The new claims 40, proposed replacement claim I'll just mention quickly, we recite instead of being disparate elements, the motor and regenerative feature are one and the same, a motor slash generator. That is an economy. We've simplified the prior art. And so again, that's a legal argument rather than factual. But we have one DC motor operating, doing all the work instead of requiring a plurality. Good morning, your honors. My name is Damien Gunning Smith and I represent the appellee at MIT Industries Inc. As the court's aware, there's two issues in the case, the obviousness of claims 16 through 18 and 27, and the board's decision denying the motion to amend. With respect to the first issue, the court should affirm the board's decision because the board dutifully applied the law of obviousness and all of its subsidiary factual findings were supported by substantial evidence. The board did find all the limitations of the claims met by the prior art. The board did find a motivation to combine and it therefore concluded the claims were obvious. This conclusion was not surprising given that Smartdoor, as you just heard, has conceded that they did not put forth any evidence of, they did not dispute that the limitations of the claims were not met by the prior art. They did not put forth any evidence of the level of ordinary skill. They did not put forth any expert evidence at all. They put forth no evidence of secondary considerations. In this context, the board's decision is virtually unassailable. All the evidence is on one side and given the deferential standard review, those findings should be affirmed. I'll address just a few of the points that Mr. Foisik made. One, in discussing the combination, he talks about, as best I can follow, there's going to be two motors and you'd have to do a substantial redesign. As the court's already noted, there's no evidence related to that in the record. But this is a straightforward combination substitution case. Randall Manufacturing is cited in the brief, cited by the board. It's a combination of familiar elements according to known methods yielding predictable results. All the evidence points to that conclusion, supports that finding. And there's nothing that can possibly dispute it on this record. They also point out, they also argue that Burke is not analogous. As the court noted, the board's finding was based on the second prong of the Biglio test. It wasn't based on whether the art was from the same field of endeavor, but it was whether they concluded that the art was reasonably pertinent to a problem solved by the 784 patent. They didn't argue the relevant finding in the briefing, and therefore they haven't even presented a valid challenge to the board's finding about Burke. He argues briefly about the inoperability of the combo. They expressly conceded numerous times before the board at oral argument about, as well as here, that you could combine the references, that it's possible to, and it wouldn't destroy the teachings. They have some question about how difficult it might be, but again, no evidence. And there's some suggestion in the briefing about secondary factors that are pure attorney argument, completely unsupported by evidence. With respect to the motion to amend, the only argument that you've heard him make is that they've simplified the prior art with a motor generator. It completely ignored in the briefing that the board expressly found that the prior art in this record establishes that there is a DC motor generator, specifically the O'Brien reference. There's an additional reference in the record of the Johansson patent that also discloses a DC motor generator. Each of those limitations was found by the board, so for those reasons, I would ask the court to affirm. If there's no questions, I would cede the remainder of my time. Okay, thank you, Mr. Gunning-Smith. Mr. Foisik? Nothing further. Okay, we thank both counsel. The case is taken under submission.